UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| FRANK SALINAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10CV00058 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on movant Salinas' "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence." The government has filed a response, and the matter is now ripe for adjudication.

## FACTS

### A. THE INDICTMENT

On December 11, 2008, a Grand Jury in the Eastern District of Missouri, Southeastern Division, returned a one-count indictment against the Movant, Frank Salinas. The Indictment charged that at a date unknown to the grand jury, but between July 15, 2008 and August 8, 2008, Salinas was a previously convicted felon in possession of two firearms that had affected interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). Salinas was arrested and made his initial appearance on this charge on December 19, 2008. On December 23, 2008, Salinas was arraigned. He entered a plea of not guilty to the charge.

### B. PRETRIAL MOTIONS

Salinas did not file any pretrial motions in his case. On January 5, 2009, Salinas filed his Waiver of Pretrial Motions, stating that he did not wish to file any pretrial motions. On January

8, 2009, Salinas appeared with his attorney and informed the Court that he did not wish to file pretrial motions.

## C. PLEA AGREEMENT

On February 4, 2009, Salinas appeared with his attorney and entered a plea of guilty to the charge made in the Indictment. At the time of his plea, Salinas had entered into a written Plea Agreement, which was filed with the Court. The Plea Agreement was signed by the Government's attorney, Salinas' attorney and Salinas.

Pursuant to the Plea Agreement, Salinas agreed to plead guilty to being a felon in possession of firearms that affected interstate commerce. (Plea Ag., ¶2A) The parties recommended that the base offense level for this offense was 33, pursuant to U.S.S.G., §4B1.4(b)(3)(B). That is the Guidelines section for use where the defendant was a felon in possession of a firearm and is also defined as an Armed Career Criminal by Title 18, U.S.C., §924(e). (Plea Ag., ¶ 3B(1)) The parties agreed that no Specific Offense Characteristics applied and that Salinas would receive a reduction of three levels for full and timely acceptance of responsibility. (Plea Ag., ¶3B(2), ¶3D) The parties further agreed that the Total Offense Level was 30. (Plea Ag., ¶3F) The parties did not have any agreement as to Salinas' Criminal History Category. (Plea Ag., ¶3G)

The Plea Agreement also specified the essential elements of each crime charged by the Government. Those elements were set out as follows:

> As to the charge made in the Indictment of being a Felon in Possession of a Firearm, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;

Two, the defendant thereafter knowingly possessed a firearm; and

Three, the firearm was transported across a state line at some time during or before the defendant's possession of it. (Plea Ag., ¶ 5)

The Plea Agreement also informed Salinas of the range of punishment for the charge, including the statutory minimum sentence of fifteen years required. This is the minimum range of punishment required by Title 18, U.S.C., § 924(e). The maximum term of imprisonment was life, again pursuant to that statute. The only way that this statute is applicable to Salinas is due to his classification as an Armed Career Criminal pursuant to Title 18, U.S.C., § 924(e). (Plea Ag., ¶ 6) The Plea Agreement contained a Statement of Facts which Salinas agreed to by signing the agreement. That Statement of Facts provided that, on August 5, 2008, Salinas was in knowing possession of two firearms that had affected interstate commerce and that he had been convicted of felony offenses prior to his possession of those firearms. (Plea Ag., ¶ 4)

The parties agreed to jointly recommend a sentence of 180 months for Salinas, which was the statutory minimum sentence that Salinas could receive. (Plea Ag.., ¶ 2B)

**D. PLEA HEARING**

On February 4, 2009, Salinas entered his guilty plea to the charge made in the Indictment. During that plea hearing, Salinas answered several questions concerning his understanding of the charge made against him, the plea agreement and the range of punishment. (Plea Tr., p.3 - 10)

The Court then inquired as to what facts the Government would prove if there was a trial of Salinas' case. The Government's attorney read the Statement of Facts from the Plea Agreement into the record. The Court asked Salinas if he agreed with the Statement of Facts.

Salinas objected to the inclusion of any fact which indicated that he burglarized a building to acquire the firearms. The Government amended its Statement of Facts to say that the officers would testify that their investigation led to their belief that he acquired the firearms during a burglary. With that one correction, Salinas admitted all of the other facts in the Statement of Facts. (Plea Tr., p. 10 - 13.) Salinas admitted that he had signed the Plea Agreement and that he understood it. (Plea Tr., p. 6,7.)

At the conclusion of the plea hearing, Salinas informed the Court that he was pleading guilty because he was guilty of the charged offense. The Court found Salinas guilty and set his sentencing hearing for April 27, 2009. (Plea Tr., p. 14, 15.)

**E. THE PRESENTENCE REPORT**

Following the plea, a Presentence Investigation Report (P.S.R.) was prepared by United States Probation Officer Denise J. Broom. Officer Broom recommended that Salinas' base offense level be set at level 24. Four levels were added, pursuant to U.S.S.G., § 2K2.1(b)(1)(B), because the probation officer found that the offense involved eight firearms. The probation officer found that the firearms involved in the offense were stolen, resulting in another two levels being added under U.S.S.G., § 2K2.1(b)(4). Four additional levels were added under U.S.S.G., § 2K2.1(b)(6), because the defendant possessed the firearms in connection with another felony offense, that of burglary. After a reduction of three levels for acceptance of responsibility, Salinas' total offense level was determined to be 30. (P.S.R., ¶20 - 28.) However, because Salinas was found to be an Armed Career Criminal, his final offense levels changed. U.S.S.G., § 4B1.4(b)(3)(A) sets the base offense level for an Armed Career Criminal at 34, if the defendant possessed the firearm in connection with another felony offense. Since the probation officer had

already made that finding, she assessed the base offense level for Salinas at 34. With three levels off for acceptance of responsibility, the final offense level became 31. (P.S.R., § 29, 30.)

Salinas had a significant criminal history prior to this offense. On September 7, 1994, Salinas was convicted of the felony of Robbery in the Circuit Court of Manatee County, Florida, in Case Number 1994 CF 1740. Salinas was sentenced to 90 days in jail for this offense. He received no criminal history points for this conviction. (P.S.R., ¶ 33.)

On May 16, 1995, Salinas was convicted of the felony offense of Resisting Arrest With Violence and Possession of Contraband in a Detention Facility in Manatee County, Florida, in Case Number 1995 CF 0579. Salinas was sentenced to 20 months imprisonment. He received three criminal history points for this conviction. (P.S.R., ¶ 37.)

On March 21, 1997, Salinas was convicted of the felony of Burglary of a Dwelling in the Circuit Court of Hillborough County, Florida, in Case Number 96 CF 18965. Salinas was sentenced to a term of imprisonment of 37.2 months. He received three criminal history points for this conviction. (P.S.R., ¶ 41.)

On August 7, 2000, Salinas was convicted of the felony of Burglary of a Structure in the Circuit Court of Manatee County, Florida, in Case Number 2000 CF 0708. Salinas was sentenced to a term of imprisonment of 3 years. He received three criminal history points for this conviction. (P.S.R., ¶ 45.)

On September 18, 2003, Salinas was convicted of the felony of Dealing in Stolen Property in the Circuit Court of Manatee County, Florida, in Case Number 2003 CF 1052. Salinas was sentenced to a term of imprisonment of 27.45 months. He received three criminal history points for this conviction. (P.S.R., ¶ 49.)

On September 22, 2003, Salinas was convicted of the misdemeanor offenses of Retail Theft, Resisting Merchant and Possession of Drug Paraphernalia in the Circuit Court of Manatee County, Florida, in Case Number 2003 CF 0708. Salinas was sentenced to time served on each count. He received two criminal history points for this conviction. (P.S.R., ¶ 53.)

On October 12, 2006, Salinas was convicted of the felonies of Burglary of a Structure and Grand Theft in the Circuit Court of Hillsborough County, Florida, in Case Number 06 CF 6019. Salinas was sentenced to a term of imprisonment of twelve months. He received three criminal history points for this conviction. (P.S.R., ¶ 56.)

On January 5, 2007, Salinas was convicted of the felony of Grand Theft in the Circuit Court of Manatee County, Florida, in Case Number 2006 CF 2356. Salinas was sentenced to a term of imprisonment of 18 months. He received three criminal history points for this conviction. (P.S.R.,¶ 60.)

On January 10, 2007, Salinas was convicted of the misdemeanor offenses of Obstructing an Officer Without Violence, Giving False Information to a Law Enforcement Officer and Loitering in the Circuit Court of Manatee County, Florida, in Case Number 2006 MM 3870. Salinas was sentenced to 45 days in jail. He received one criminal history point for this conviction. (P.S.R., ¶ 64.)

On April 16, 2008, Salinas was convicted of the municipal offense of Driving While Intoxicated in the Municipal Court of Birch Tree, Missouri, in Case Number 08AN-MU00068. Salinas was fined $400. He received one criminal history point for this conviction. (P.S.R., ¶ 67.)

Salinas received two more criminal history points because the instant federal offense conduct occurred less than two years following Salinas' release from prison. Salinas received a

total of 24 criminal history points. His criminal history category was calculated to be VI. (P.S.R., ¶71 - 73.) Salinas' Guideline range of punishment, with a final offense level of 31 and a criminal history category of VI was 188 to 235 months. The P.S.R. noted the parties agreement to recommend a sentence lower than that range to a total of 180 months. (P.S.R., ¶ 93.)

**F.     THE SENTENCING HEARING**

A sentencing hearing was conducted on April 29, 2009. No objections were filed to the P.S.R. by either party. Salinas stated that he and his attorney had both received a copy of the P.S.R. (S. Tr., p. 16) The Government recommended a final sentence of imprisonment of 180 months as did Salinas' attorney. (S.Tr., p. 17, 18.) After allocution, the Court imposed a sentence of 180 months on the charge made in the Indictment. (S.Tr., p. 19 - 23.) There were no objections made to the imposition of this sentence.

**G.     THE APPEAL**

Salinas did not appeal his conviction or sentence.

**H.     MOTION FOR POST-CONVICTION RELIEF PURSUANT TO §2255**

On April 12, 2010, Salinas filed a Petition pursuant to Title 28, United States Code, Section 2255 for a writ of habeas corpus. Salinas asks that his conviction and sentence be set aside. In his original petition, he claimed that he had directed his attorney to file a notice of appeal.  An evidentiary hearing was held on that claim.  This Court found that this claim was not proven and that no relief would be granted, thus there is no further need to address any failure to appeal issue.  Salinas' other grounds for relief are as follows:

**Ground one. Ineffective assistance of counsel.**
**Improper use of U.S.S.G., § 4(b)(3)(A) for base offense level.**

In this ground, Salinas claims that U.S.S.G., § 4(b)(3)(A) should not have been used to calculate his base offense level. Salinas claims that this section was used in error as he was only convicted of a violation of Title 18, U.S.C., § 922(g)(1) (the statute prohibiting a felon from possessing a firearm) and no other offense, and, therefore, the P.S.R. should not have used a Guidelines section applicable to Armed Career Criminals who use or possess the firearm in connection with a violent felony or a controlled substance offense.

The only relevant question here is whether Salinas was properly classified as an Armed Career Criminal subject to a statutory minimum sentence of 180 months. The Government recommended a sentence of 180 months and did not try to enhance Salinas' sentence based on any use of the firearm. The P.S.R. reflected that Salinas' offense levels were calculated by the Probation Office with their view that Salinas used or possessed the firearm in connection with a violent felony (Burglary). That resulted in their determination that Salinas' base offense level was 34. Salinas and the Government had agreed that the base offense level would be 33. That level is consistent with Salinas' classification as an Armed Career Criminal with no other enhancements for his use or possession of the firearm.

The offense levels calculated by the Probation Office resulted in a Guidelines sentencing range of 188 to 235 months. But the parties had agreed to recommend a sentence of only 180 months. This is the minimum sentence permissible if Salinas is properly classified as an Armed Career Criminal pursuant to Title 18, U.S.C., § 924(e). Therefore, the only issue to be determined is whether Salinas' prior criminal history makes him an Armed Career Criminal.

**Ground two. Ineffective assistance of counsel.**
**Whether prior convictions are crimes of violence.**

In this ground, Salinas asserts that he does not have the number of qualifying convictions that would allow this Court to classify him as an Armed Career Criminal. However, the Government has demonstrated that Salinas has three or more prior convictions for crimes of violence. Those convictions make him and Armed Career Criminal.

Salinas also contends that only felony convictions that occur within 15 years of the federal offense can be used as qualifying convictions to make a defendant an Armed Career Criminal. He is simply wrong on this issue. He is citing authority for criminal history category calculations which is not applicable to the determination of Armed Career Criminal status.

**Ground three. Ineffective assistance of counsel.**
**Whether burglary of a structure is a crime of violence.**

In this ground, Salinas argues that his prior conviction for the Burglary of a Structure is not a crime of violence. Again, he is simply incorrect as to the status of the law on this issue. Case law establishes conclusively that Salinas' prior conviction is classified as a violent felony in this Circuit.

**Ground four. Ineffective assistance of counsel.**
**Whether Salinas can be classified as an Armed Career Criminal for a conviction under Title 18, U.S.C., § 922(g)(1).**

In this ground, Salinas asserts that he cannot be classified as an Armed Career Criminal where his federal conviction was for being a felon in possession of a firearm under Title 18, U.S.C., § 922(g)(1). Again, Salinas is mistaken on the law on this issue. His classification as an Armed Career Criminal is a matter of sentencing, as the relevant cases in this Circuit demonstrate.

## APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF.

28 U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

28 U.S.C. § 2255.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*. at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) and *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims

raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

**B.    INEFFECTIVE ASSISTANCE OF COUNSEL**

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to

either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U.S. at 267.

**C. EFFECT OF GUILTY PLEA ON APPEALABLE ISSUES**

A defendant who enters a plea of guilty thereby waives his right to request relief under 28 U.S.C. § 2255 with the exception of those issues related to jurisdiction only. *See*, e.g., *Hill v. United States*, 928 F.2d 303 (8th Cir. 1991); *United States v. Stewart*, 972 F.2d 216, 217-18 (8th

Cir. 1992); *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989).

When a guilty plea is delivered by the Movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) citing *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1607 (1973). A guilty plea operates as a break in the chain of events of the criminal process. *Tollett,* 411 U.S. at 267. Once a criminal defendant solemnly professes his guilt before the court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Only the voluntary and intelligent character of the guilty plea may be attacked. *Id.* Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the Eighth Circuit adopted and applied its rationale to motions under Section 2255. *Bass*, 739 F.2d at 406.

Even a defendant's reliance on his counsel's opinion as to the calculation of defendant's sentence would not make a defendant's plea involuntary, where the record reveals that the defendant was fully informed and knowingly and voluntarily pleaded guilty. *See Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982); *Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir. 1990).

**DISCUSSION**

Salinas' contentions are all legal issues that may be resolved without an evidentiary hearing. The only issue is whether Salinas was properly classified as an Armed Career Criminal. If he was, then his sentence must be 180 months, which is the sentence he received. There are no other issues that affect his sentence. The remainder of this discussion shall be directed to that issue alone.

**STATUTORY AUTHORITY FOR STATUS AS AN ARMED CAREER CRIMINAL**

The statute that classifies a defendant as an Armed Career Criminal is set out in Title 18, U.S.C., § 924(e). That statute states, in relevant part:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in Section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . .

The statute cited above indicates that any person who is convicted of a violation of Title 18, U.S.C., § 922(g)(1)(felon in possession of a firearm) and who has three prior felony convictions for violent felonies or serious drug offenses shall be imprisoned for a minimum of fifteen years. This classification is referred to as being an Armed Career Criminal. (U.S.S.G., § 4B1.4) The record in this case is clear that Salinas was convicted of violating Title 18, U.S.C., § 922(g)(1). He admitted that he was a previously convicted felon in possession of a firearm that affected interstate commerce. Salinas was charged with a violation of Title 18, U.S.C., § 922(g)(1) in his Indictment. He pled guilty to that same offense. It is beyond question that Salinas fits the first requirement for classification as an Armed Career Criminal, as he was charged and convicted of being a felon in possession of a firearm that affected interstate commerce as that conduct is prohibited by Title 18, U.S.C., § 922(g)(1).

The only other question is to determine whether Salinas' prior convictions are qualifying convictions as either violent felonies or serious drug offenses for this purpose. The definition of a violent felony is set out in Title 18, U.S.C., § 924(e)(2)(B):

> The term "violent felony" means any crime punishable by imprisonment for a term
> exceeding one year, or any act of juvenile delinquency involving the use or

carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Prior Eighth Circuit cases can help determine whether Salinas' prior convictions should be classified as violent felonies. Salinas' first felony conviction is for Robbery. (P.S.R., ¶ 33.) In *United States v. Forrest*, – F.3d –, 2010 WL 2732879 (8th Cir., July 13, 2010), the Eighth Circuit Court of Appeals held that a felony conviction for robbery was a violent felony for Armed Career Criminal classification purposes. Robbery is considered to be categorically a violent felony. *Id*., * 2. Salinas' prior robbery conviction was properly used as a violent felony to determine whether he was an Armed Career Criminal.

Salinas' second violent felony was Resisting Arrest With Violence. (P.S.R., ¶ 37.) The statute makes the prior felony a violent felony if the offense has as an element the use, attempted use or threatened use of physical force against the person of another. Paragraph 39 of the P.S.R. details the offense conduct for this conviction as follows:

> Court records reflect that on February 24, 1995, the defendant possessed cannabis on the grounds of a county detention facility, and knowingly and willfully resisted, obstructed, or opposed an officer of the Palmetto Police Department in the lawful execution of legal process *by offering or doing violence to his person*. (Emphasis furnished.)

Clearly, Salinas' conduct involved the use, attempted use or threatened use of physical force against another person. This conviction was properly used as a predicate offense to classify Salinas as an Armed Career Criminal.

Salinas' Burglary of a Dwelling conviction was also properly classified as a violent

felony. (P.S.R., ¶ 41.) First, it is a listed felony conviction in Title 18, U.S.C., § 924(e)(2)(B)(ii) as a violent felony and in the relevant Guidelines section, U.S.S.G., § 4B1.2(a)(2).[1] In *United States v. Stymiest*, 581 F.3d 759, 768, 769 (8th Cir., 2009), this Circuit held that all burglaries, from burglaries of a dwelling to burglaries of unoccupied structures, are violent felonies. Salinas' felony conviction for the burglary of a dwelling is also a violent felony.

Salinas' next conviction was for the burglary of a structure. (P.S.R., ¶ 45.) He contends that this conviction should not be classified as a violent felony. However, the authority provided in *Stymiest* refutes his contention. This conviction was also properly classified as a violent felony.

Salinas has a second conviction for the burglary of a structure at Paragraph 56 of the P.S.R. That conviction is a violent felony, pursuant to *Stymiest*.

All told, Salinas has five violent felonies. He only needs three to be classified as an Armed Career Criminal.

Salinas also contends that only convictions within fifteen years of the federal offense conduct may be counted for the Armed Career Criminal classification. He is mistaken. Evidently, Salinas is using the provisions of U.S.S.G., § 4A1.2(e)(1) for his authority. In fact, that section says that only convictions where the sentence exceeded one year and one month are counted that were imposed within fifteen years of the federal offense conduct. But that section only applies to the calculation of the defendant's criminal history category. It is inapplicable to any classification of a defendant as an Armed Career Criminal.

---

[1]The Guidelines section, U.S.S.G., § 4B1.2(a)(2) uses the term "crime of violence" instead of violent felony. However, those two terms are given identical meanings for this purpose. *United States v. Stymiest,* 581 F.3d 759, 767 (8th Cir., 2009).

In *United States v. Rodriguez*, – F.3d – , 2010 WL 2852954 (8th Cir., 2010), the appellate court considered whether the age of a defendant's prior conviction was a factor in the determination of whether they were an Armed Career Criminal. That court held that "the statute (§ 924(e)) does not contain a time limit for predicate offenses" and that the appellate courts "have concluded Congress would have included a time limit had it wanted to do so." *Id*. The court concluded, "Neither the Due Process Clause of the Fifth Amendment nor any other constitutional provision prohibits consideration of all prior felony offenses for purposes of § 924(e), regardless of age. *Id*. Salinas' argument that the age of his prior convictions bars their consideration for his classification as an Armed Career Criminal is simply incorrect as a matter of law.

The only remaining issue is whether Salinas can be sentenced under the provisions of § 924(e) when his conviction was for a violation of § 922(g)(1) (being a felon in possession of a firearm). This question has been answered in the affirmative in several cases.

This question was considered in *United States v. Maxwell*, 363 F.3d 815 (8th Cir., 2004). In that case, decided from this division, the defendant was charged with a violation of Title 18, U.S.C., § 922(g)(1), being a felon in possession of a firearm. He was convicted of that charge. A week prior to sentencing, it was discovered that Maxwell had a third qualifying violent felony. The sentencing court found Maxwell to be an Armed Career Criminal pursuant to Title 18, U.S.C., § 924(e), even though he had never been charged with violating that statute. Maxwell appealed that classification and sentence. The court of appeals affirmed Maxwell's sentence and noted that § 924(e) was merely a sentencing enhancement provision for individuals conviction of violating § 922(g). *Id*, at FN6. In *United States v. Campbell*, 270 F.3d 702, 708 (8th Cir., 2001),

this Circuit held that "§ 924(e) acts as a sentencing enhancement provision for individuals convicted of violating § 922(g). Because Salinas was convicted of violating Title 18, U.S.C., § 922(g)(1), the provisions of § 924(e) must be used to impose a sentence of at least 180 months for him.

Salinas' sentence was the least that he could receive for his conviction by statute. There is no basis to conclude that his classification as an Armed Career Criminal was in error or that his sentence was wrongfully imposed.

**CONCLUSION**

For the foregoing reasons, Salinas' § 2255 petition is **DENIED.**

Dated this 27th day of April, 2011.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE